# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

JASON M.,[1]                                      1:19-cv-00697-BR

       Plaintiff,                          OPINION AND ORDER

v.

Commissioner, Social
Security Administration,

       Defendant.


**JOHN E. HAAPALA, JR.**
401 E. 10th Avenue
Suite 240
Eugene, OR 97401
(541) 345-8474

       Attorney for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

------

[1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**JUSTIN LANE MARTIN**
Social Security Administration
Office of the General Counsel
701 Fifth Avenue
Suite 2900 M/S221A
Seattle, WA 98104-7075
(206) 615-2531

        Attorneys for Defendant

**BROWN, Senior Judge.**

    Plaintiff Jason M. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under Titles XVI and II of the Social Security Act.

    For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

    Plaintiff filed his applications for DIB and SSI on June 28, 2016.  Tr. 156, 160.[2]  Plaintiff alleged a disability onset date of September 1, 2015.  His applications were denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on May 25, 2018.  Tr. 23-43.  Plaintiff and a vocational

_____

    [2]Citations to the official transcript of record filed by the Commissioner on September 10, 2019, are referred to as "Tr."

expert (VE) testified at the hearing, and Plaintiff was
represented by an attorney.

On June 28, 2018, the ALJ issued an opinion in which she
found Plaintiff is not disabled and, therefore, is not entitled
to benefits.  Tr. 10-18.  Pursuant to 20 C.F.R. § 404.984(d),
those decisions became the final decisions of the Commissioner on
March 11, 2019, when the Appeals Council denied Plaintiff's
request for review.  Tr. 1-6.  *See Sims v. Apfel*, 530 U.S. 103,
106-07 (2000).


## BACKGROUND

Plaintiff was born on December 22, 1975.  Tr. 53.  Plaintiff
was 42 years old at the time of the hearing.  Plaintiff has a
GED.  Tr. 186.  Plaintiff has past relevant work experience as a
furniture mover, construction worker, and kitchen helper.
Tr. 16.

Plaintiff alleges disability due to low-back pain with
right-side sciatica, lumbar-disc herniation, anteriolischesis,
stenosis of lumbar spine, narrowing of the spinal canal, "bulging
disc of backbone," and an "abnormal neurological examination."
Tr. 44-45.

Except when noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the

medical evidence.  *See* Tr. 14-15.

**<u>STANDARDS</u>**

The initial burden of proof rests on the claimant to
establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th
Cir. 2012).  To meet this burden, a claimant must demonstrate his
inability "to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which . . . has lasted or can be expected to last for
a continuous period of not less than 12 months."  42 U.S.C.
§ 423(d)(1)(A).  The ALJ must develop the record when there is
ambiguous evidence or when the record is inadequate to allow for
proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d
881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d
453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.  42
U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*,
682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is
"relevant evidence that a reasonable mind might accept as
adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11
(quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690
(9th Cir. 2009)).  "It is more than a mere scintilla [of

evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the

Commissioner determines the claimant does not have any medically severe impairments or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since his September 1, 2015, alleged onset date. Tr. 12.

At Step Two the ALJ found Plaintiff has the severe impairment of spondylolisthesis of the lumbar spine with

foraminal stenosis.  Tr. 12.  The ALJ found Plaintiff's
depression and anxiety are not medically determinable
impairments.  Tr. 13.

At Step Three the ALJ concluded Plaintiff's medically
determinable impairments do not meet or medically equal one
of the listed impairments in 20 C.F.R. part 404, subpart P,
appendix 1.  Tr. 19-20.  The ALJ found Plaintiff has the RFC to
perform light work with the following limitations:  sitting for
five hours in an eight-hour workday; only standing for two hours
in an eight-hour workday; walking for "up to two hours . . . in
an eight-hour workday (with normal breaks)"; occasionally
balancing, stooping, kneeling, crouching, crawling, and climbing
ramps or stairs; and never climbing ropes or ladders.  Tr. 13.
The ALJ also found Plaintiff "must be permitted [to] sit or [to]
stand as needed while remaining on task."  Tr. 13.

At Step Four the ALJ concluded Plaintiff cannot perform his
past relevant work.  Tr. 16.

At Step Five the ALJ found Plaintiff can perform jobs that
exist in significant numbers in the national economy.  Tr. 17.
Accordingly, the ALJ found Plaintiff is not disabled.


**DISCUSSION**

Plaintiff contends the ALJ erred when she (1) partially
rejected Plaintiff's testimony; (2) partially rejected the

opinion of Anh Nguyen, D.O., treating osteopath; and (3) failed to include all of Plaintiff's limitations in her assessment of Plaintiff's RFC and her findings at Step Five.

**I.  The ALJ did not err when she partially rejected Plaintiff's testimony.**

Plaintiff alleges the ALJ erred when she partially rejected Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what

testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834).

Plaintiff testified at the hearing that he stopped working in 2015 because of his back issues. Plaintiff could no longer do the lifting required to load and to unload furniture. Plaintiff stated he has experienced stinging, knife-like pain in the middle of his back "right above [his] belt" for "well over two years." Tr. 34. When Plaintiff bends or squats, the pain radiates into both of his legs, and his right leg is especially painful. Plaintiff rated his level of pain as a "7 to 8" on a scale of one-to-ten with ten meaning "you need to be hospitalized." Tr. 35. Plaintiff takes Flexeril, Mobic, and ibuprofen, which "keep the pain levels down a little bit and help [him] move a little bit better," but they do not provide complete relief. Tr. 35. When Plaintiff bends down and tries to pick something up, he will "almost black out" from the pain. Tr. 35. Plaintiff can only lift ten pounds "if [he's] lucky" because "it puts too much pressure on [his] back." Tr. 38. Plaintiff can sit for thirty minutes, at which point he needs to lie down for fifteen-to-thirty minutes to alleviate his pain. Plaintiff can stand for ten-to-fifteen minutes and walk for a block before he starts to have back pain and his legs go numb. Plaintiff stated it is "really difficult" for him to bend, twist, stoop, crouch, or crawl. If he had to do a job in which those things were

required, he would have to take a fifteen-minute break every 30
or 45 minutes to rest his back.  Plaintiff stated a five- or six-
hour workday "puts [him] down for two to three days because [he]
can't move after that."  Tr. 37.  Plaintiff could work three-to-
five hours on a job that allowed him to alternate between
sitting, standing, and walking.  Plaintiff stated it takes him
all day to do the dishes.  If the laundry basket is too heavy,
Plaintiff has to have his son carry it.  Plaintiff cannot cook
well because leaning over the stove hurts his back.  Plaintiff
gets four or five hours of sleep per night because of his back
pain.

    The ALJ found Plaintiff's "medically determinable
impairments could reasonably be expected to cause [his] alleged
symptoms," but Plaintiff's "statements concerning the intensity,
persistence and limiting effects of [his] symptoms are not
entirely consistent with the medical evidence and other evidence
in the record."  Tr. 14.  The ALJ noted the record reflects
Plaintiff chose more conservative treatment such as over-the-
counter medication and physical therapy to treat his pain rather
than surgery.  For example, on August 19, 2016, Plaintiff
reported to Ana Marie Fergueson, N.P., that he is experiencing
"worsening back pain"; that he cannot stand, walk, or sit "for a
long time"; and that he is "laying in bed most of the time just
so he can tolerate the pain."  Tr. 310.  Plaintiff told

N.P. Fergueson that he had seen an orthopedic surgeon who Plaintiff "claimed told him there is nothing he can do unless [Plaintiff] lost his body function for bowel movement or urination." Tr. 310. Plaintiff stated the surgeon did not recommend physical therapy. On examination Plaintiff had a normal range of motion, but he "exhibit[ed] tenderness." Tr. 312. Plaintiff could sit for three-to-five minutes, could lie down for five-to-ten minutes, and could stand less than three minutes without experiencing pain levels between five and eight. Plaintiff refused pain medication and chose to treat his pain with over-the-counter medication and marijuana. N.P. Fergueson ordered an MRI of Plaintiff's lumbar spine and referred Plaintiff to physical therapy. An August 19, 2016, x-ray of Plaintiff's lumbar spine reflected Plaintiff had "moderate to severe degenerative narrowing at L5-S1[,] mild narrowing . . . at L3-4 and L4-5," and "grade 1-2 anterolisthesis of L5 on S1 which may predispose to impingement." Tr. 315.

A September 10, 2016, MRI of Plaintiff's lumbar spine reflected "[m]oderate to marked disc space narrowing at L5-S1 along with mild disc space narrowing at L3-4 and moderate disc space narrowing at L4-5"; a "stable small broad-based central disc protrusion without evidence of significant central canal stenosis or neural foraminal narrowing" at L4-L5; and a "stable broad-based disc-osteophyte-complex with uncovering of the

posterior disc margin secondary to the spondylolisthesis [with] mild bilateral facet joint osteoarthritis" at L5-S1, which "results in moderate to severe bilateral neural foraminal narrowing."  Tr. 316.

Plaintiff engaged in physical therapy from August 2016 through September 14, 2016.  On September 14, 2016, his physical therapist, Michele Hartwick, reported Plaintiff was "improving motion with pelvic tilts," had "tolerated upgrade to TA level 2," was "able to hold core with full UE flexion to wall," and was "tolerating isometric core exercises well with increasing resistance and UE challenge."  Tr. 336.  Nevertheless, Hartwick reported Plaintiff continued "to demonstrate limitations which require skilled PT Intervention to achieve" his goals.  Tr. 336. Hartwick, therefore, requested authorization for more sessions for Plaintiff.  Hartwick's request was approved, and Plaintiff engaged in further physical therapy.  On October 13, 2016, Hartwick reported Plaintiff was doing his physical therapy exercises at home, had "started reducing muscle relaxers," and was experiencing sciatica less frequently.  Tr. 346.  Hartwick noted Plaintiff's pain "somewhat limit[ed] [his] ability to participate in [physical] therapy."  Tr. 347.

On November 8, 2016, Plaintiff reported to Hartwick that he had met with Jason Conaughty, M.D., treating physician, on October 27, 2016, and he "was considered for fusion with

laminectomy but . . . insurance denied due to smoking status."
Tr. 349.  Hartwick noted Plaintiff was "improving strength with
isometric holds.  Beginning to demonstrate consistency with low
level squat activities and not provoking symptoms."  Tr. 348.
Hartwick "[i]nitiated rotation with very light resistance and no
provocation of [Plaintiff's] symptoms."  Tr. 350.

On December 7, 2016, Hartwick reported Plaintiff was
"improving strength with isometric holds.  Good form with squats
and squat rows.  Good core isometrics with advanced plank and
instability exercises."  Tr. 355.  Hartwick "continue[d] to
recommend limited twisting with resistance or weight[s]."
Tr. 355.  On December 20, 2016, Hartwick noted Plaintiff was
"progressing well with difficult core/hip exercises and no
complaint of pain - with asymmetrical and single plane
exercises."  Tr. 357.  Hartwick "[c]ontinue[ed] to recommend
limited twisting with resistance or weight[s]."  Tr. 357.

On February 16, 2017, Plaintiff met with Ahn Nguyen, D.O.,
to establish care.  Dr. Nguyen discussed with Plaintiff "the
importance of tobacco cessation" both for his general health and
in order to qualify for surgery, but Plaintiff "was slightly
hesitant."  Tr. 360.  Plaintiff advised Dr. Nguyen that he was
"unsure if he wants surgery when there isn't [a] guarantee that
he will get better."  Tr. 360.  Dr. Nguyen advised Plaintiff that
"without [surgery], it doesn't seem like [Plaintiff] is able to

live his life, work, [or] move." Tr. 360. Dr. Nguyen discussed with Plaintiff three possible plans: "1) Continue current plan, which is flexeril, NSAIDs, PT; 2) Start tobacco cessation in case he wants to do surgery, and . . . ; 3) Start tobacco cessation with plan to go to surgery." Tr. 360.

On January 18, 2018, Plaintiff was seen by Dr. Nguyen to "fill out disability paperwork." Tr. 364. Dr. Nguyen stated he had seen Plaintiff "once, last year [to] establish care." Tr. 364. Dr. Nguyen noted Dr. Conaughty recommended Plaintiff have an L5-S1 laminectomy with fusion, but Dr. Conaughty required Plaintiff to have six months "of tobacco cessation" before he would do surgery. Plaintiff, however, smoked a half a pack of cigarettes per day and "has not been able to quit." Tr. 364. Plaintiff continued to be uncertain "if he wants surgery, not sure if surgery is the answer for him . . . though he is in constant pain and not able to do any work." Tr. 364. Dr. Nguyen again discussed with Plaintiff the "importance of tobacco cessation not only so that he can [have] surgery but [also for] his overall health." Tr. 365.

On February 17, 2018, Dr. Nguyen reported Plaintiff was still smoking half a pack of cigarettes a day and that he was planning to quit that summer, which would clear the path to surgery if Plaintiff wanted to pursue that plan.

On May 10, 2018, Dr. Nguyen reported Plaintiff was still

smoking and was not ready to stop smoking or to have surgery.

On March 3, 2018, Michael Henderson, M.D., conducted a musculoskeletal examination of Plaintiff. Dr. Henderson noted Plaintiff was able to transfer from sitting to standing "normal[ly]"; Plaintiff did not have any antalgia, neuropathy, or myelopathic patterns when walking; and Plaintiff was able to squat "one quarter of the way down." Tr. 368. Plaintiff's

> [m]uscle bulk and tone are normal and symmetric.
> Strength is 5/5 at the hips, knees, ankles and
> extensor hallucis longus bilaterally. Reflexes
> are 3/4 at the patella and Achilles bilaterally.
> The reflexes were symmetric subjectively and
> objectively and minimal percussion was used to
> elicit a response. Sensation to pinwheel was
> abnormal along the right medial calf and posterior
> lateral calf sensation in the feet and throughout
> the left lower extremity was normal.

Tr. 368. Dr. Henderson concluded Plaintiff has

> Spondylolisthesis with foraminal stenosis: The
> MRl shows grade 1-2 L5-Sl anterolisthesis and
> moderate to severe bilateral foraminal stenosis at
> the L5-S1 junction. However, the exam did not
> corroborate or correlate with the MRl imaging
> findings. The history was relatively vague as to
> the symptoms. The only limitations he describes
> are lifting difficulties and standing for
> prolonged periods. His nonorganic pain behaviors
> on exam, and the objective findings were benign.
> Previously the reflexes were diminished on the
> right side but are now symmetric with the left
> side indicating improvement of the neuropathy.
> However, he does have spondylolisthesis and
> foraminal stenosis. This would cause moderate
> impairments at most, and with this limit sitting
> and standing to 40 minutes at a time each and
> should be able to alternate. He is able to sit,
> stand and walk 8 hours per day with normal breaks
> and thing else [*sic*] alternates between them.
> Overall the objective findings do not support the

> subjective complaints of pain or functional
> limitations.

Tr. 368. Dr. Henderson opined Plaintiff could continuously carry up to ten pounds, sit or stand for forty minutes at one time without interruption, walk for one hour at one time without interruption, sit for five hours total in an eight-hour workday, stand for four hours total in an eight-hour workday, and walk for four hours total in an eight-hour workday.

The Court finds on this record that the ALJ did not err when she partially rejected Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

## II. The ALJ did not err when she partially rejected the opinion of Dr. Nguyen, treating physician.

As noted, Plaintiff contends the ALJ erred when she partially rejected Dr. Nguyen's opinion.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002). When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at

957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

On January 18, 2018, Dr, Nguyen completed a Physical Medical Source Statement in which he noted he is Plaintiff's treating osteopath and sees Plaintiff once a year.  Dr. Nguyen stated Plaintiff has moderate-to-severe "bilateral foraminal L5-S1." Tr. 377.  Plaintiff has pain at a "6/7 out of 10, worsening [with] movement, [and is] unable to lift heavy object[s]." Tr. 377.  Dr. Nguyen pointed to Plaintiff's 2016 MRI, which reflected "grade 1-2 spondyolistesis of L5-S1 resulting in mod-severe bilateral foraminal narrowing @ L5-S1."  Tr. 377. Dr. Nguyen stated Plaintiff takes NSAIDS "as tolerated" and flexeril, which makes him dizzy but "does help," and that physical therapy "failed."  Tr. 377.  Dr. Nguyen stated Plaintiff can sit for ten minutes and stand for five minutes at a time before needing to change position; can walk one block "without rest or severe pain"; can stand and/or walk for two hours in an eight-hour workday; can sit for two hours in an eight-hour workday; can frequently lift less than ten pounds; can occasionally lift ten pounds; can rarely twist, crouch, squat, climb stairs, or climb ladders; and can never stoop or carry 50 pounds.  Tr. 379.  Dr. Nguyen noted Plaintiff would need to take unscheduled breaks every fifteen-to-thirty minutes throughout the workday, and each break would be between five and ten minutes;

Plaintiff would be off task "25% or more" during an eight-hour workday; and Plaintiff would miss more than four days of work per month due to "pain/parasthesias."  Tr. 378-79.

The ALJ rejected Dr. Nguyen's opinion on the grounds that Dr. Nguyen began treating Plaintiff in February 2017, saw Plaintiff only once per year, and had seen Plaintiff only twice at the time he offered his opinion.  *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017)(citing 20 C.F.R. § 404.1527(c)) ("The length of the treating relationship, the frequency of examination, [and] the nature and extent of the treatment relationship" are factors the ALJ must consider when deciding whether to give a treating physician's opinion controlling weight.).  In addition, Dr. Nguyen's assessment of Plaintiff's limitations was unsupported by the medical record and contradicted by Plaintiff's testimony at the hearing.  For example, Plaintiff testified he can sit for thirty minutes, can stand for ten-to-fifteen minutes, and walk for a block before he starts to have back pain and his legs go numb.  If he had to do a job in which he had to bend, twist, stoop, crouch, or crawl, he would have to take a fifteen-minute break every thirty or forty-five minutes to rest his back.  Plaintiff stated he could work three-to-five hours on a job that allowed him to alternate between sitting, standing, and walking.  Similarly, the record reflects Plaintiff improved with physical therapy, and by

December 2016 Plaintiff was "progressing well with difficult core/hip exercises and no complaint of pain - with asymmetrical and single plane exercises." Tr. 357. His physical therapist "[c]ontinue[ed] to recommend limited twisting with resistance or weight[s]." Tr. 357. Finally, as noted, Dr. Henderson found Plaintiff could continuously carry up to ten pounds, sit or stand for forty minutes at one time without interruption, walk for one hour at one time without interruption, sit for five hours total in an eight-hour workday, stand for four hours total in an eight-hour workday, and walk for four hours total in an eight-hour workday.

On this record the Court concludes the ALJ did not err when she partially rejected Dr. Nguyen's opinion because the ALJ provided clear and convincing reasons for doing so based on substantial evidence in the record.

**V.    The ALJ did not err when she failed to include all of Plaintiff's alleged limitations in her assessment of Plaintiff's RFC and/or at Step Five.**

Plaintiff contends the ALJ erred in her assessment of Plaintiff's RFC and/or when she concluded at Step Five that Plaintiff could perform other jobs in the national economy because the ALJ failed to consider the limitations indicated by Plaintiff and Dr. Nguyen.

The Court, however, has found the ALJ properly partially rejected Plaintiff's testimony and the opinion of Dr. Nguyen.

Thus, the Court concludes the ALJ did not err when she failed to include all of Plaintiff's alleged limitations in her assessment of Plaintiff's RFC and/or when she found at Step Five that Plaintiff could perform other jobs in the national economy.

## **CONCLUSION**

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this 8th day of April, 2020.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge